[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Following removal of this case from Small Claims court and pursuant to an Amended Complaint dated February 14, 1995, the plaintiff, Benchmark Technical Services, Inc., makes three claims CT Page 1287-II against defendant Clocktower Shops, Inc. In the First Count, plaintiff claims defendant has refused to return a security deposit plaintiff paid to its former landlord, a predecessor in interest to defendant. In the Second Count, plaintiff alleges that defendant's actions constitute an unfair trade practice. In the Third Count, plaintiff alleges conversion.
On March 3, 1995, defendant filed an answer denying all significant allegations, along with two special defenses. Defendant on that date also filed a counterclaim in connection with repairs it undertook after plaintiff vacated the premises.
Trial was held before the undersigned judge on January 4, 1996. On that day, following the completion of evidence, plaintiff abandoned the Third Count.
For the reasons stated below, the court finds for plaintiff on Count One of the Amended Complaint; for defendant on Count Two; and for defendant on the Counterclaim.
DISCUSSION
To summarize and simplify, the facts produced at trial were as follows.
Pursuant to an office lease agreement of November 11, 1990, the plaintiff entered into an agreement with Connecticut Savings Bank, assignee of Middletown Clocktower Limited Partnership, in connection with premises located at 386 Main Street, Middletown. Plaintiff's Exhibit 2. A rent and security deposit check of $4,082.54 was paid by plaintiff to Connecticut Savings Bank for Clocktower Shops on February 15, 1991. The security deposit was in the amount of $2,098.33. Plaintiff's Exhibits 2, 4.
In early 1992, the FDIC was appointed as receiver for Connecticut Savings Bank. On or about March 11, 1994 the Clocktower Shops, located at 386 Main Street in Middletown, was sold to Clocktower Shops, Inc. The Heritage Management Group, which had been managing the property, informed plaintiff of the sale in a March 11, 1994 letter. Plaintiff's Exhibit 5. Plaintiff's Exhibit 1, a Connecticut Special Warranty Deed, evidences the transaction between the FDIC and defendant Clocktower Shops, Inc.
By a letter of July 13, 1994, Donald Piecuch, Benchmark's CT Page 1287-JJ president, wrote to Sebastian Timbro, president of Clocktower Shops, Inc. The letter was a formal request for the return of the $2,098.33 security deposit that Benchmark had made to Connecticut Savings Bank on November 11, 1990. Defendant has refused to return any amount to plaintiff. Mr. Piecuch testified that he interpreted Plaintiff's Exhibit 2, the lease between Benchmark and Connecticut, Savings Bank, as providing a basis for his claim to return of the security deposit from defendant. Mr. Piecuch testified that plaintiff did not provide written notice to extend the 3 year lease as required by the lease, which expired on November 11, 1993. He testified that he did not demand return of the deposit from the FDIC.
Mr. Piecuch also testified that he removed some cabinets when he left and failed to repair repair the walls. He testified that the shelves he removed had originally been paid for by Benchmark. He personally removed the cabinets with a screwdriver, leaving only small screw holes in the wall. The property was otherwise left in clean and neat condition, he said. Witness Carolyn Laban confirmed this. Anthony Colabope testified that he was the managing partner of Mathog and Maniello, the property manager hired by Connecticut Savings Bank. He said that while security deposits generally went to Connecticut Savings Bank, he had no specific knowledge of what happened to the security deposit in this case.
Gita Patel testified that she assisted in managing the property until approximately March 11, 1994, as agent for FDIC. She testified about Defendant's Exhibit 1, the final rent roll for, the property, dating from March, 1994. The exhibit indicates that no security deposit was being held for Benchmark Technical Services. She testified that she had records confirming this.
Sebastian Timbro testified that when he purchased the property for $525,000.00 from the FDIC, a Closing Statement, Defendant's Exhibit 2, was generated. This exhibit indicates that security deposits for current tenants in the amount of $2,429.66 were turned over to him. Exhibit 2 does not specifically attribute any security deposit to Benchmark. He executed the Special Warranty Deed, Plaintiff's Exhibit 1, at the closing. He was advised that he could not rely on the accuracy of the documents he received, and did not independently investigate or inquire as to the whereabouts of the security deposit. He knew plaintiff was in occupancy when, he bought the building and accepted rent from plaintiff in April, May and June 1994. Exhibit CT Page 1287-KK B of Plaintiff's Exhibit 1 states that "rights of tenants in possession" is a permitted encumbrance.
Mr. Timbro testified that he had no knowledge of where plaintiff's security deposit was, and would have given it back to plaintiff if it had come into his possession.
Mr. Timbro said that Mr. Piecuch told him he wanted to take the cabinets, but that he had never given Mr. Piecuch permission to do so, telling him he would get back to him. Mr. Timbro testified he incurred $350.00 fixing holes in the walls, out of $950.00 spent in labor and materials for repairs after plaintiff vacated the premises. Defendant's Exhibit 3.
On rebuttal, Mr. Piecuch testified that he interpreted paragraph 14d of Plaintiff's Exhibit as requiring Mr. Timbro to return the security deposit. This provision states as follows:
 d. Landlord may deliver the Security Deposit to the purchaser of Landlord's interest in the demised premises in the event that such interest be sold or transferred. Thereupon Landlord shall be discharged and released from all further liability with respect to the Security Deposit or the return thereof to Tenant and Tenant agrees to look solely to the new Landlord for the return of the Security Deposit. This provision shall also apply to any subsequent transferees.
Mr. Piecuch testified that he was unaware of any evidence that a transfer of the sort contemplated in Paragraph 14d had occurred.
LEGAL DISCUSSION
Because what is at issue is a commercial lease, not a residential one, the parties agree that the provisions of General Statutes Section 47a-21 — and particularly 47a-21(e) — are inapplicable.[1]
Plaintiff bears the burden of proof by a preponderance of the evidence on its claims. The first issue before the court, then, may be framed as follows: Has plaintiff proven, given the circumstances of this case, that a landlord who is a successor in interest to a commercial lease must return to a tenant in possession a security deposit over which he has had no possession? Plaintiff is unable to cite the court to any CT Page 1287-LL Connecticut cases which answer this question. Nor has the court independently found any Connecticut cases directly on point. In the absence of any specific guiding cases or statutory provisions, the court must look to the relevant documents and general principles as applied to the facts of this case.
Examination of Paragraph 14d of the lease leads the undersigned judge to conclude that it is essentially irrelevant to the resolution of this case, given the facts present. Paragraph 14d provides that Landlord (Connecticut Savings Bank) shall be discharged and released from liability respecting the security deposit only after Landlord has delivered the security deposit to any purchaser of Landlord's interest in the demised premises. Paragraph 14d also provides that upon such discharge and release occurring, Tenant agrees to look solely to the new Landlord for the return of the security deposit. But in the instant case, there is no evidence that such a delivery ever occurred. Therefore, there is no basis for the court to conclude that this lease provision became operative; no basis for the court to conclude that under this provision Connecticut Savings Bank was discharged and released; and no basis for the court to conclude that under this provision, Tenant must look solely to the new Landlord for the return of the Security Deposit.
However, Exhibit B of Plaintiff's Exhibit 1 indicates that defendant took the property expressly subject to "Rights of tenants, and parties and possession," which would include plaintiff. Exhibit B also states as follows, in relevant part:
 (C) Grantee acknowledges and agrees that Grantee has not relied upon any representations or warranties (oral or written) made by or purportedly on behalf of Grantor unless expressly set forth herein, and has not relied upon any documents or other information (oral or written) supplied by or purportedly on behalf of Grantor.
 (1) GRANTEE UNDERSTANDS AND AGREES THAT ANY DOCUMENTS OR INFORMATION PROVIDED TO GRANTEE BY GRANTOR OR ON GRANTOR'S BEHALF HAVE BEEN OBTAINED FROM A VARIETY OF SOURCES, HAVE NOT BEEN INDEPENDENTLY INVESTIGATED OR VERIFIED BY GRANTOR, AND ARE NOT TO BE RELIED UPON BY GRANTEE IN PURCHASING THE SUBJECT PROPERTY. GRANTOR MAKES NO EXPRESS REPRESENTATIONS OR WARRANTIES, AND DISCLAIMS CT Page 1287-MM ANY AND ALL IMPLIED WARRANTIES, CONCERNING THE TRUTH, ACCURACY AND COMPLETENESS OF ANY DOCUMENTS OR INFORMATION INCLUDING, WITHOUT LIMITATION, ANY AUCTION BROCHURE OR CATALOG, SUPPLIED TO GRANTEE BY GRANTOR OR AUCTION BROCHURE OR CATALOG, SUPPLIED TO GRANTEE BY GRANTOR OR ANYONE ACTING OR PURPORTING TO ACT ON GRANTOR'S BEHALF.
 (2) GRANTEE AGREES THAT IT HAS INVESTIGATED THE SUBJECT PROPERTY AND IS SATISFIED WITH ITS CONDITION, AND HAS INDEPENDENTLY VERIFIED ANY INFORMATION PROVIDED BY GRANTOR, OR IF GRANTEE HAS FAILED TO SO INVESTIGATE THE SUBJECT PROPERTY AND/OR HAS FAILED OR BEEN UNABLE TO INDEPENDENTLY VERIFY ANY OF THE INFORMATION PROVIDED BY GRANTOR, GRANTEE AGREES THAT ITS FAILURE TO INVESTIGATE AND/OR VERIFY INFORMATION IS AT ITS OWN RISK AND IS ITS OWN DECISION FOR WHICH IT IS SOLELY RESPONSIBLE.
A purchaser of realty often takes subject to the rights of the tenant under a lease if the purchaser has notice of the lease. 49 Am.Jur.2d, Landlord and Tenant Section 1061 (1995). Cf.North Street Associates v. Watstein Watstein, P.C.3 Conn. L. Rptr. 225 (1990). The notice may be actual or constructive. Id.
Possession of the premises is constructive notice to a purchaser of the rights of the possessor. Id. A party in possession under a lease often may enforce the lease against a subsequent purchaser of the property. 49 Am.Jur.2d, Landlord and Tenant Section 1062 (1995). Where one purchases realty from a landlord, he takes it with notice of the right or title of the tenant in possession.Id.
In this case, plaintiff occupied a significant amount of space on the third floor of the premises. Plaintiff also paid defendant rent, which defendant accepted, for periods during which defendant was owner — including June, 1994, although plaintiff vacated on June 17th. Defendant purchased the premises subject to the disclaimers and conditions in Plaintiff's Exhibit 1. The Connecticut Special Warranty Deed indicates that defendant took subject to the rights of tenants in possession. Defendant also took the premises "As-Is" and "With All Faults" under the Connecticut Special Warranty Deed. Defendant failed to make any independent inquiry whatever of anyone as to the whereabouts of CT Page 1287-NN the security deposit. The court views this issue as a close one, given the lack of Connecticut authorities to provide guidance. However, under all the circumstances, I have concluded that defendant took the premises subject to plaintiff's right to return of the security deposit. Given the facts and circumstances of this case, it is not unreasonable to have expected plaintiff to have made some inquiry concerning the whereabouts of the security deposit.
On the counterclaim, I conclude that defendant has prevailed. See Paragraphs 11c and 11d of the lease. Defendant is entitled to payment of the amount expended to fix the screw holes. Mr. Timbro testified this cost $350.00. There is no contrary testimony on this point.
Therefore, judgment for plaintiff shall enter in the amount of $2,098.33 on Count One of the complaint. Plaintiff has failed to prove that defendant engaged in an unfair trade practice given the facts of this case, Connecticut General Statutes Section 42-110b, and therefore; judgment on Count Two is for defendant. On the counterclaim, judgment shall enter for the defendant against plaintiff in the amount of $350.00.
There is no evidence in the record which would lead the court to conclude that defendant's failure to pay the contested security deposit was in bad faith or wrongful. Nor is there any evidence defendant has had possession of the security deposit, or knowledge of its whereabouts. The record reflects only an honest disagreement on a contested issue. Plaintiff's request for interest and attorney's fees is therefore denied.
Costs shall be assessed by the clerk.
Douglas S. Lavine JUDGE, SUPERIOR COURT